UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSEPH S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00470-JPH-MJD |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Claimant Joseph S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. District Judge Hanlon has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 14.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in October 2018, alleging an onset of disability as of August 14, 2018. [Dkt. 8-8 at 2-5.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Belinda Brown ("ALJ") on May 19, 2021. [Dkt. 8-2 at 35-58.] On June 3, 2021, ALJ Brown issued her determination that Claimant was not disabled. *Id.* at 29. The Appeals Council then denied Claimant's request for review on October 26, 2021. *Id.* at 2-5. Claimant timely filed his Complaint on December 29, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

2

disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

      In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Brown first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of August 14, 2018. [Dkt. 8-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "learning disability, social anxiety disorder, and bipolar disorder." *Id*. at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 21-22. ALJ Brown then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, and repetitive tasks and only occasional contact with supervisors, coworkers, and the public.

*Id.* at 24.

At step four, relying on testimony from a vocational expert, the ALJ found that Claimant was able to perform his past relevant work as a machine feeder (DOT 699.686-010) during the relevant time period. *Id*. at 28. Accordingly, ALJ Brown concluded Claimant was not disabled. *Id.* at 29.

### IV. Discussion

Claimant asserts a host of errors, arguing that the ALJ: (1) based her decision on cherrypicked evidence, (2) did not provide a logical bridge from the evidence to her conclusions, (3) erred in assessing Claimant's and third-party statements, (4) erred in her Step 3 determination, (5) assessed an RFC that is inconsistent with Claimant's capabilities, (5) did not support the limitations she assessed, (6) failed to present all of Claimant's limitations to the vocational expert, and (7) found Claimant capable of past occupations that are inconsistent with his current capabilities. [Dkt. 10.] In response, the Commissioner asserts that the ALJ based her

4

decision on substantial evidence and that Claimant's arguments boil down to a request that the Court reweigh the evidence. [Dkt. 12.] The Court addresses each of Claimant's arguments, as necessary, below.

### A. The ALJ Failed to Consider Claimant's Medication Side Effects.

An ALJ is required to consider medications that a physician prescribes to treat a claimant's symptoms as well as any side effects those medications produce. SSR 16-3p. As Claimant recognizes, the ALJ acknowledged his subjective allegations and noted that Claimant's medications helped him manage his symptoms of his bipolar disorder and social anxiety disorder. [Dkt. 8-2 at 24-27.] However, Claimant testified that the medication he takes in the morning, Buspar, "knocks [him] back out and when [he] wake[s] up, half the day is gone." *Id.* at 52. When the ALJ asked the Claimant if he had talked to a doctor about adjusting the medication, Claimant testified that the doctor "told [him] to cut it in half" but that he "get[s] the same result but it's not as bad as it was when [he] took the whole pill. Because when I took the whole pill . . . the room would be spinning so bad that [he] would have to lay down in bed on [his] couch and crash out." *Id.* at 53.

The ALJ did not acknowledge or address this testimony about the side effects caused by Claimant's medication or how these side effects, if credited, affect Claimant's ability to work. Although the ALJ might have decided that no RFC limitations were warranted based on Claimant's medication side effects, she was required to say so and explain why. "We cannot uphold an administrative decision that fails to mention highly pertinent evidence." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted). Because the ALJ failed to address Claimant's statements regarding his medication side effects, the Court is unable to determine from the decision why the ALJ determined that a specific work-related functional limitation to

5

address the medication side effects was not necessary in the RFC, or even whether she considered the issue at all. *See* SSR 96-8p. Without any such analysis in the opinion, the Court is prevented from engaging in a meaningful review. The undersigned therefore recommends that this case be remanded to correct this error.

### B. The ALJ's Step Three Analysis

Claimant next argues that the ALJ's Step Three determination is "flawed because the ALJ failed to properly assess Plaintiff's conditions under Listings 12.04, 12.06, and 12.11." [Dkt. 10 at 17.] At step three, the ALJ must determine whether the claimant has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments. See 20 C.F.R. § 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The claimant bears the burden of proving his condition meets or equals a listed impairment. *Steward v. Bowen*, 858 F.2d 1295, 1297 n. 2 (7th Cir. 1988). If the claimant's impairment or combination of impairments is severe enough to meet or medically equal the criteria of a Listing and meets the duration requirement set forth in 20 C.F.R. § 416.909, then the claimant is disabled. 20 C.F.R. § 416.925(c)(3). If no Listing is met, the ALJ proceeds to step four and determines the claimant's RFC.

Here, the ALJ found that Claimant has the following severe impairments: learning disability, social anxiety disorder, and bipolar disorder. [Dkt. 8-2 at 19.] She then proceeded to assess whether Claimant's impairments meet or medically equal the severity of the applicable Listings. Claimant argues that the ALJ ignored and/or inadequately analyzed evidence of marked limitations in three domains: interacting with others; adapting and managing oneself; and concentration, persistence, or pace. [Dkt. 10 at 18-20.]

To start, Claimant cites a host of allegedly ignored evidence, *id.* at 19-22, but the Court finds that the ALJ confronts the majority of that allegedly ignored evidence elsewhere in the opinion. For example, Claimant alleges the ALJ never mentioned

> (1) exams noting "somewhat" blunted and bland demeanor, "somewhat subservient" nature, poor to fair impulse control, persecutory and paranoid thought content, limited judgment, and poor, "somewhat marginal," or "fair" grooming and hygiene; (2) diagnoses of PTSD, social phobia, social anxiety disorder with panic, bipolar disorder, intermittent explosive disorder, and persistent depressive disorder; (3) prescriptions for, among others, mood regulators and anxiolytics; (4) testimony that Plaintiff suffers paranoia in addition to social anxiety and difficulty being around crowds; and, (5) reports of difficulty being around others—including family, friends, and neighbors—due to paranoia and high anxiety, bad mood swings, hypervigilance, depression, irritability, episodes of intense anger, hallucinations, becoming "triggered" and "going off" on others, wanting to fight others when angry, a lack of significant social activities aside from going to the grocery store, and that Plaintiff has lost jobs due to issues with coworkers and walked off a job due to anger.

\*\*\*

In addition, Claimant asserts that the ALJ

> ignored other critical evidence undermining the ALJ's assessment. For example, Dr. Al-Khattab noted that Plaintiff was easily distracted during her exam. Plaintiff reported insomnia due to bipolar disorder, racing thoughts, nightmares, hallucinations, anxiety, and mood issues; he needs reminders to take medications and attend appointments, cannot handle finances on his own, can pay attention for 10 minutes to 1 hours, and has difficulty focusing and reading. Plaintiff's wife stated that Plaintiff has night terrors, is forgetful, loses focus easily, and becomes stressed and overwhelmed when asked to pay bills or plan family events.

*Id.* at 19-21. Claimant is patently incorrect. Much of this evidence is addressed by the ALJ throughout her more in-depth RFC analysis, [Dkt. 8-2 at 24-28], and the ALJ was not required to discuss every single line of the record in order to meet her burden. *Burnett v. Bowen*, 830 F.2d 731, 735 (7th Cir. 1987) ("A written evaluation of every piece of testimony and submitted evidence is not required" so long as the ALJ "articulate at some minimum level [her] analysis of

7

the evidence in cases in which considerable evidence is presented to counter the agency's position.")

Claimant also argues that the ALJ did not adequately analyze and explain her assessment of certain evidence. First, the Claimant argues the ALJ "did not explain how being 'cooperative' and 'pleasant' during time-limited exams supports only a moderate limitation in social interaction given the evidence above showing that Plaintiff struggles with sustained interaction[3] and interaction with groups of people," and "did not discuss how an ability to live only with his wife, shop in stores only when there are not many people[4] . . . spend time with friends depending on his mood, and sometimes deal with authority 'ok'[5] suggests appropriate functioning in the workplace." [Dkt. 10 at 20] (citations omitted) (footnotes added). The Court notes, however, that the ALJ's assessment of a moderate limitation in interacting with others rests on much more:

> [A]ccording to his statements, the claimant is also able to shop, spend time with friends and family, attend church, deal appropriately with authority, and live with others. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, and appeared comfortable during appointments. . . . Mental status examinations of the claimant since re-establishing treatment documented . . . calm and cooperative behavior . . . . good eye contact, good mood, appropriate affect . . . . [C]laimant has endorsed the ability to . . . get along well with authority figures, socialize with friends and family often, play video and card games with friends, go camping, go to church, go to restaurants . . . . [I]n addition, the claimant has worked for extended,

---

[3] Claimant cites to no evidence of issues with sustained interaction. The Court notes that the record contains evidence that Claimant both "spend[s] time together with [wife] & his friends . . . as much as possible" and yet is "edgy and nervous around friends." [Dkt. 8-12 at 16, 32]; *see also id.* at 28, [Dkt. 8-14 at 27-28].
[4] Claimant testified that he can be around people and go shopping now that he has restarted his medications, but he still gets anxious in crowds of twelve or more people. [Dkt. 8-2 at 52-53.]
[5] Claimant cites to a Function Report answer of "sometimes ok" with authority figures. [Dkt. 8-12 at 49.] The Court notes that, at other times, the Claimant and his wife answered, respectively, "pretty good I am very respectful" and "he is very respectful and usually gets along well." *Id.* at 18, 29.

> continuous periods following his alleged onset date[6]. . . [and] for the majority of the time . . . was not receiving any mental health treatment for his allegedly disabling mental impairments.[7] This evidence is also inconsistent with the claimant's alleged severity of the symptoms and limitations. . . . [Claimant] explained that he was better able to tolerate social interaction once he was taking his medications.

[Dkt. 8-2 at 23-27] (citations omitted) (footnote added). The ALJ clearly credits Claimant's and his wife's testimony, finding Claimant's social anxiety to be severe and assessing a corresponding RFC limitation, but she also clearly explains why evidence in the record—Claimant's and his wife's own conflicting statements, Claimant's hearing testimony, Claimant's treating providers, and Claimant's work history during periods of non-treatment—does not support a finding of a marked limitation in interacting with others. Based on this record, and the deferential standard,

---

[6] Claimant takes issue with the ALJ's finding that Claimant's "ability to work for 'extended, continuous periods' following his alleged onset date undermined his reported limitations" because he was laid off from Texas Roadhouse for problems getting along with others, making it an unsuccessful work attempt. [Dkt. 10 at 14-15.] While this may be true—although the Court notes that Claimant reported to one of his physicians that he was fired from Texas Roadhouse for coming to work with the flu, [Dkt. 8-14 at 27-28]—the ALJ also found that Claimant worked as a dishwasher for approximately a year at Longview Management Group, Inc. [Dkt. 8-2 at 26.] Claimant clearly was able to maintain continuous employment for months at both jobs before any of his mental impairments allegedly affected his employment, so the ALJ's finding that his employment history undermines his subjective symptoms is supported by substantial evidence.
[7] Claimant takes issue with this, arguing "the ALJ erred in relying on the absence of additional mental health treatment without first considering the reasons Plaintiff may not have pursued or obtained additional treatment." [Dkt. 10 at 10.] However, the ALJ did consider and acknowledge the reasons Claimant did not pursue additional treatment. See [Dkt. 8-2 at 25] ("[O]wing to a lapse of medical insurance, the claimant did not receive any mental health treatment, neither outpatient nor inpatient, or have access to his psychotropic medications for an extended period starting from, at the latest, approximately January 2019 and continuing to November 2020 when he re-established treatment with the Hamilton Center.") Second, in reading the opinion as a whole, the Court reads the ALJ's reliance on the lack of health treatment not as evidence that Claimant did not need treatment, but rather as evidence that provides important context to other evidence. Specifically, the ALJ notes that Claimant worked for extended, continuous periods following the alleged onset date, and whether the Claimant was medicated during this period of work provides relevant context to determining the severity of Claimant's symptoms and limitations. [Dkt. 8-2 at 26.]

the Court cannot conclude that the ALJ committed error in finding that Claimant's social anxiety disorder supported no more than a moderate limitation on Claimant's ability to interact with others.

Next, Claimant takes issue with the ALJ's explanation of her assessment that Claimant only has a moderate limitation in concentration, persistence, or pace, arguing "the ALJ did not explain how the ability to watch tv and play video games depending on his mood and prepare meals with his wife's help support only a moderate limitation in concentration, persistence, or pace." [Dkt. 10 at 21] (citations omitted). Here, again, Claimant ignores the rest of the ALJ's opinion, wherein the ALJ explains:

> [Claimant] reported that he was able to . . . take care of cats, help with wife with household chores and finances, wash dishes, do laundry, vacuum, mop the floor, dust furniture, do yard work such as cutting the grass, prepare meals . . . play video and card games with friends, . . . and watch television. . . . [T]his evidence is inconsistent with the claimant's alleged severity of the symptoms and limitations. . . . [A] field office representative noted that the claimant did not appear to have any difficulties understanding, concentrating, and answering during questions during the interview. . . . Mental status examinations of the claimant since re-establishing treatment documented concentration that ranged from easily distracted to good. . . . [T]he record reflects that the claimant has worked for extended, continuous periods following his alleged onset date. . . . Although this work activity did not constitute disqualifying substantial gainful activity, it does it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. . . . [F]or the majority of the time following his alleged onset date and until recently, the claimant was not receiving any mental health treatment. . . . [T]he claimant's allegations of disabling learning or intellectual difficulties are inconsistent with the claimant's history of semi-skilled work as a trailer assembler, his ability to graduate from high school albeit with the assistance of special education services, and the claimant's fairly intact daily activities.

[Dkt. 8-2 at 23-26.] Beyond a November 2020 notation from Dr. Al-Khattab that Claimant was easily distracted, [Dkt. 8-15 at 12], there is no medical evidence supporting Claimant's contention that he has limitations in "concentrating generally" or "completing

tasks." Nevertheless, and despite conflicts in his own subjective reports, *see* [Dkt. 8-12 at 28, 48, 57], the ALJ "[gave] greatest weight to the claimant's subjective statements," [Dkt. 8-2 at 28], and assessed a greater limit in concentration, persistence, or pace than both State agency psychologists. *Compare* [Dkt. 8-2 at 23] with [Dkt. 8-4 at 19, 33]. She then clearly explains throughout her opinion how Claimant's work history, treatment history, and daily activities since the alleged onset date all are inconsistent with Claimant's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms. [Dkt. 8-2 at 26-27.] Ultimately, after reviewing the record, the ALJ determined that only a moderate limitation in concentration, persistence, or pace was appropriate, and the Court finds no reason to disturb that conclusion given the deferential standard of review.

    Lastly, Claimant takes issue with the ALJ's explanation of her assessment that Claimant only has a mild limitation in adapting and managing oneself. [Dkt. 10 at 22.] Claimant argues that the ALJ "failed to sufficiently explain how the evidence supports only a mild limitation in adapting and managing oneself" and lists cherry-picked evidence from the record supporting a greater limitation that the ALJ assessed. *Id.* In finding that Claimant has a mild limitation in adapting and managing oneself, the ALJ explained,

> [t]he claimant asserted that he has difficulties handling stress. . . . [T]hat said, the claimant has also stated that he is able to handle self-care and personal hygiene and care for pets. Meanwhile, the objective evidence in the record showed the claimant to have no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control[8]. . . . Mental status

---

[8] Claimant takes issue with this, arguing that Claimant "suffers from" intermittent explosive disorder. [Dkt. 10 at 22.] However, Dr. Wooden never diagnosed Claimant with intermittent

11

> examinations of the claimant since re-establishing treatment documented appropriate dress, calm and cooperative behavior, normal speech, full orientation, good eye contact, good mood, appropriate affect, concentration that ranged from easily distracted to good, thought process that ranged from circumstantial to organized, fair insight, impulse control that ranged from poor to good, and judgment that ranged from limited to good. . . . [T]he claimant has worked for extended, continuous periods following his alleged onset date. . . . [T]he claimant testified that psychotropic medication again helped to manage his symptoms. . . . Dr. Wooden[,a psychologist who conducted three consultative psychological evaluations of Claimant,] repeatedly indicated that there were no signs of psychosis.

[Dkt. 8-2 at 23-27] (citations omitted) (footnote added). Again, the ALJ clearly explains throughout her opinion how Claimant's work history, treatment history, and daily activities since the alleged onset date all cut against other evidence (notably only found in one medical record from one therapy session, *see* [Dkt. 8-15 at 13-15], a far cry from a full and substantial record) noting poor to fair impulse control, persecutory and paranoid thought content, and limited judgment. [Dkt. 8-2 at 26-27.] Claimant is correct that some of his medical records note "[g]rooming and hygiene marginal, and dressed simply in ragged jumpsuit" and "poorly-groomed." [Dkt. 8-14 at 23, 28.] However, the ALJ confronts this by noting that records reflect appropriate dress and affect since Claimant re-started treatment. [Dkt. 8-2 at 25.] Because the

---

explosive disorder; on August 6, 2018, he stated: "Based upon all descriptors this claimant gives relative to his alleged psychological issues, . . . the claimant may show some evidence of an intermittent explosive disorder. . . diagnostic impressions: … intermittent explosive disorder features." [Dkt. 8-14 at 13-16.] Dr. Wooden examined Claimant twice more, on February 11, 2019, and June 4, 2019, and did not mention nor diagnose intermittent explosive disorder, nor anger or temper issues. [Dkt. 8-14 at 27-33.] Furthermore, Claimant himself stated on September 11, 2020, regarding anger: "I don't have much of a problem anymore because I know to take some time to cool down. I just walk away. Sometimes I say some things I don't mean, but that's it." [Dkt. 8-15 at 4.] The objective medical evidence indicates that, while Claimant had features of intermittent explosive disorder in August 2018, he no longer had anger or temper control problems in February 2019, June 2019, and September 2020. Thus, it was not error for the ALJ to note and rely on the fact that the objective evidence shows no current problems with temper control.

ALJ adequately explained how she weighed the evidence, this conclusion is also supported by substantial evidence.

In sum, Claimant disagrees with how the ALJ considered the evidence, but the ALJ gave a sufficient explanation to build the requisite "logical bridge between the evidence and the result" when making her Step 3 findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *see Shaun R. v. Saul*, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019) ("So, as she is required to do, the ALJ acknowledged evidence on both sides of the issue and reached a conclusion. As long as she didn't ignore evidence that points to a disability, she has fulfilled her duty to minimally articulate the path to her conclusion."). In accordance with the standard of review, the Court declines to reweigh the evidence of record and independently determine the precise severity-level of limitations with the contested domains. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009); Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore,* 743 F.3d at 1123 (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)). Here, the Court, reading the ALJ opinion as a whole, finds the ALJ adequately confronted the conflicting evidence pointed to by Claimant and discussed above. See *Rice v. Barnhart,* 384 F.3d 363, 370 n. 5 (7th Cir.2004) ("[I]t is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *see also Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985) ("[W]e examine the [ALJ]'s opinion

as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.").

That said, as noted above, the ALJ did not confront Claimant's reported medication side effects, and this Court cannot say without a doubt that proper consideration of Claimant's reported medication side effects would not change the ALJ's Paragraph B criteria analysis, particularly with regard to concentration, persistence, or pace. Thus, on remand, the Undersigned recommends that the ALJ be instructed to, at a minimum, explain whether and how Claimant's medication side effects affect her analysis at Step Three.

### C. The ALJ's RFC Assessment

Claimant next contends that the ALJ improperly considered Claimant's social functioning; concentration, persistence, or pace limitations; and ability to adapt and manage himself.

1. The ALJ's Consideration of Claimant's social functioning and ability to adapt and manage himself were proper.

Both state-agency psychologists Drs. Kennedy and Unversaw found Plaintiff capable of semi-skilled tasks in a less social setting that did not require constant and intense interaction with the general public and coworkers due to his social anxiety. [Dkt. 8-4 at 21, 37.] The ALJ found their conclusions that Claimant could perform semi-skilled work undermined by Claimant's subjective statements, consultative examiner Dr. Wooden's learning disability diagnosis, and Claimant's history of special education services. [Dkt. 8-2, at 27-28.] She thus limited Claimant to simple, routine, and repetitive tasks with occasional interaction with the public, coworkers, and supervisors. *Id.* Claimant takes issue with the assessment, arguing that the ALJ's RFC failed to account for the limited depth or length of interactions with others that Claimant could handle

14

and Claimant's difficulty in handling stress. [Dkt. 10 at 28-29.] However, it is unclear what kinds of work restrictions might address Claimant's limitations in depth or length of social interaction, nor his difficulty in handling stress, because he hypothesizes none. Claimant cites no evidence that his stress-related deficits keep him from performing simple, routine, and repetitive tasks. In fact, the ALJ notes that those types of tasks, such as household chores, are exactly what Claimant reports he *can* perform on a daily basis. [Dkt. 8-2 at 23-24.] Further, Claimant points to no evidence in the record, from Claimant or his medical providers, that supports length or depth of interaction restrictions. Therefore, Claimant has not identified any evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.

The ALJ tied the record evidence to the limitations included in the RFC, tailoring Claimant's workplace setting to accommodate his social anxiety, difficulty handling changes in routine, and learning disability. *Id.* at 28. Thus, regarding Claimant's social functioning and ability to adapt and manage himself, the Court sees no error in the ALJ's assessment; she considered all limitations supported by record evidence. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019).

2. The ALJ's RFC Determination Did Not Adequately Account for His Moderate Limitation In Concentration, Persistence or Pace.

Claimant argues that the ALJ's RFC restriction to simple, routine, and repetitive tasks is insufficient to address Claimant's limitation in concentration, persistence or pace. Because the ALJ found Claimant has a moderate limitation in concentration, persistence or pace and credited Claimant's assertions that he "has limitations in concentrating generally, following instructions, and completing tasks," [Dkt. 8-2 at 23], she needed to explain how her corresponding RFC limitation sufficiently deals with Claimant's concentration, persistence or pace limitations. To be

sure, a restriction to "simple" tasks may address issues with concentration, but it does not address issues with persistence and pace. *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020). Claimant's problems with following instructions can be addressed by "simple" tasks as well, especially in light of the record evidence showing his difficulty in following instructions stems from his learning disability. *See* [Dkt. 8-12 at 17, 28, 48, 57.] However, an RFC limitation to simple, routine, and repetitive tasks does not address Claimant's limitation in his capability to complete those tasks. Thus, the Undersigned recommends remand to assess a persistence limitation or to explain why one is not needed. In addition, on remand the ALJ should address the evidence of record regarding Claimant's medication side effects and the effect, if any, they have on Claimant's concentration, persistence, or pace limitations.

## V.  Conclusion

For the reasons stated above, the Undersigned recommends the Commissioner's decision be **REVERSED AND REMANDED for further proceedings consistent with this Order**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  18 NOV 2022

*[signature]*

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.